RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By:   MAXINE S. MAK (031158)
       ANGELA D. LANE (035963)
       makm@mcao.maricopa.gov
       lanea01@mcao.maricopa.gov
       Deputy County Attorneys

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4317
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 00032000

*Attorneys for Defendants Bhatia and
Maricopa County Attorney Rachel H. Mitchell*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brandon Glen Jackson,<br><br>    Plaintiff,<br><br>v.<br><br>Federal Bureau of Investigations, et al.,<br><br>    Defendants. | NO. CV22-01898-PHX-JJT-(ESW)<br><br>**DEFENDANTS NEHA BHATIA AND MARICOPA COUNTY'S ATTORNEY'S MOTION TO DISMISS (Doc. 14)**<br><br>**AND**<br><br>**MOTION FOR JUDICIAL NOTICE** |

Under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Deputy County Attorney Neha Bhatia ("Bhatia") and Maricopa County Attorney Rachel Mitchell ("Mitchell") (collectively, the "MCAO Defendants") move to dismiss each claim asserted against them in the Second Amended Complaint ("SAC").[1]

---

[1] The undersigned certifies that the parties complied with the meet and confer requirements of LRCiv. 12.1 (c) and were unable to resolve the issues discussed.

Dismissal is proper because:

    1)    Absolute prosecutorial immunity bars any individual capacity § 1983 claim against Bhatia;

    2)    Plaintiff fails to allege a § 1983 *Monell* claim because the County Attorney acts on behalf of the State, not the County, in establishing prosecutorial policy;

    3)    Plaintiff's § 1983 *Monell* claim for damages against the County Attorney in her official capacity is barred by 11th Amendment sovereign immunity;

    4)    Plaintiff fails to allege plausible *Monell* claims for violations of the First, Second, Fourth, or Fifth Amendments;

    5)    If Plaintiff has stated a Fifth Amendment claim, the *Younger* abstention doctrine requires that claim be stayed.

The MCAO Defendants also move for judicial notice of Exhibits 1-5 attached hereto. As discussed below, the Court should take judicial notice of these Exhibits, because they are related to the allegations and claims in the SAC and are matters of public record on the public docket of the Maricopa County Superior Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Standard under Rule 12(b)(6).

"Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (Quotation marks omitted)). While a court may accept the factual allegations of a complaint as true, that tenet "is inapplicable to legal conclusions." *Id*. Rule 8 does not demand detailed factual allegations, but "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. To conduct its review, the court considers the complaint, materials incorporated by reference,

and matters of which the court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II. Judicial notice.

This Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Harris v. Cnty. Of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). Further, this Court properly may take judicial notice of the dates and contents of public records, even though the court does not take judicial notice of the truth of the records' contents. *See Morales v. City of L.A.*, 214 F.3d 1151, 1154 (9th Cir. 2000). Exhibits 1-5 are documents from the criminal cases Plaintiff references in the SAC. This Court therefore should grant this Motion for Judicial Notice and consider Exhibits 1-5 for purposes of this Motion to Dismiss.  Rule 201, Fed. R. Evid; *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment").

## III. Background and procedural history.

Plaintiff Brandon Jackson ("Jackson") is a member of an Anarchist/Libertarian group known as the "Boogaloo" who asserts § 1983 and *Bivens* claims against the MCAO Defendants, the Federal Bureau of Investigations ("FBI") and Special Agents Saitta and Baniszewski. (Doc. 14 at 2-3, 10.)

Between October and December 3, 2020, Jackson participated in protests at various locations throughout Maricopa County. (*Id*. at 8.) Jackson was arrested on December 4, 2020, and his vehicle and personal property were seized. (*Id*.) On December 8, 2020, Bhatia filed a criminal complaint against Jackson in Maricopa County Superior Court Case No. CR2020-145527, for 1) conspiracy to commit misconduct involving weapons; 2) misconduct involving weapons; 3) resisting arrest; 4) hindering prosecution in the first degree. (Direct Complaint, CR2020-145527 (Ex. 2).) On December 12, 2020, the FBI executed a warrant at Jackson's home for "weapons manufacturing" and Jackson's

personal property was seized. (Doc. 14 at 8.) During the prosecution, Jackson was offered plea deals, all of which he rejected. (Doc. 14 at 9.) The charges against Jackson were dismissed without prejudice on July 18, 2022. (Minute Entry dated July 18, 2022, CR2020-145527 (Ex. 3).) On August 30, 2022, Bhatia filed a criminal complaint against Jackson in Maricopa County Superior Court Case No. CR2022-006716, for 1) hindering prosecution by providing a false statement to law enforcement and 2) resisting arrest. (Direct Complaint, CR2022-006716-001 (Ex. 4).) A preliminary hearing is scheduled for March 10, 2023, in CR2022-006716-001. (Release Order, CR2022-006716-001 (Ex. 5).)

### A. Federal court proceedings.

Jackson filed this lawsuit on November 7, 2022, asserting Section 1983 and *Bivens* claims arising out of violations of his First, Second, Fourth, and Fifth Amendments. (Doc. 1.) On November 22, 2022, he filed an Amended Complaint. (Doc. 5.) After the undersigned met and conferred with Jackson, he filed a SAC on February 9, 2023, asserting official capacity claims against the MCAO Defendants. (Doc. 14). Jackson alleges that Bhatia prosecuted him, suppressed exonerating evidence, and "pursued a personal vendetta by attempting to re-charge Jackson after charges were dropped." (*Id*. at 7.) Jackson asserts that Arizona citizens who express their First Amendment rights are censored, deplatformed, and targeted for prosecution. (*Id*. at 8-9.) Jackson further alleges that seizure of his personal property—which included firearms—violated his Second and Fourth Amendment rights. (*Id*.) Lastly, Jackson alleges that the CR2022 case violates the Double Jeopardy clause of the Fifth Amendment. (*Id*.)

## IV.  Legal Argument.

### A. Jackson's claims against Bhatia are barred by absolute prosecutorial immunity.

Jackson's claim for damages against Bhatia for her actions as a prosecutor fails because prosecutors are "absolutely immune from liability under section 1983" for conduct that is "intimately associated with the judicial phase of the criminal process."

*Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).[2] Absolute immunity applies even where a prosecutor commits a *Brady* violation. *See Broam v. Brogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) (holding that while failing to turn over exculpatory material is a due process violation, a prosecutor is nonetheless entitled to absolute immunity from a civil suit for damages). Such immunity applies even if it leaves 'the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty.'" *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir.1986) (en banc) (quoting *Imbler*, 424 U.S. at 427); see also, *McCarthy v. Mayo*, 827 F.2d 1310, 1315 (9th Cir. 1987) ("The intent of the prosecutor when performing prosecutorial acts plays no role in the immunity inquiry.").

Although Jackson indicates he sues Bhatia in her official capacity, Jackson also alleges that Bhatia wrongfully prosecuted him, suppressed "exonerating evidence," and after the charges against him were dismissed, charged him in a subsequent case as retaliation or in pursuit of a vendetta. (Doc. 14 at 7-8.) To the extent the allegations are construed as an individual capacity claim against Bhatia, Jackson fails to state a claim against Bhatia because prosecuting criminal offenses, "suppressing" evidence, and charging criminal offenses are intimately associated with the judicial process and as such, Bhatia has absolute prosecutorial immunity for such acts. Jackson's allegations of improper motives for his prosecution do not alter the immunity analysis because the subjective intent of the prosecutor is irrelevant to whether absolute prosecutorial immunity applies. Therefore, to the extent Jackson pleads an individual capacity claim against Bhatia for damages arising from being prosecuted, it is barred by absolute prosecutorial immunity and must be dismissed with prejudice.

  **B.** **Jackson's *Monell* claim must be dismissed because the County Attorney is a state official when establishing and implementing prosecutorial policy.**

Jackson sues the MCAO Defendants in their official capacities, which is another

---

[2] To the extent Jackson sues Mitchell in her individual capacity for "continued . . . pursuit of [protesters] in Maricopa County," such claims are barred by absolute prosecutorial immunity. [Doc. 14 at 8]

way of bringing a claim against the official's office. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). [3] Section 1983 claims cannot be brought against state officials because states are not persons for the purposes of § 1983 claims. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Section 1983 claims, however, may be brought against a municipality. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978). To hold a local government liable for an official's conduct, a plaintiff must show that official (1) had final policymaking authority "concerning the action alleged to have caused the particular constitutional . . . violation at issue" and (2) was the policymaker for the local governing body—not the state—for the act at issue. *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781-785 (1997). Thus, if the County Attorney acts as a state official in relation to Jackson's claims, he fails to allege a *Monell* claim against her. Whether a policymaker acts on behalf of the state or local government is determined by analyzing the official's "actual function . . . in a particular area," as defined by relevant state law. *Id.* at 786. If the official acts on behalf of the state, dismissal of the § 1983 *Monell* claim is appropriate. *McMillian*, 520 U.S. at 783, 793.

Under state law, the County Attorney and her deputies "on behalf of the state" when prosecuting criminal offenses. A.R.S. § 11-532(A); Ariz. R. Crim. P. Rule 1.4(g). Thus, when functioning as a prosecutor, the County Attorney and her deputies are state officials. Charging criminal offenses and offering plea deals are prosecutorial functions. *See e.g., Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (holding that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to protections of absolute immunity.") and *Brilely v. California*, 564 F.2d 849, 856 (9th Cir. 1977) ("prosecutorial immunity extends to the process of plea bargaining as an 'integral part of the judicial process'"). Similarly, establishing policies about charging and plea bargaining

---

[3] As an official capacity claim is another way of pleading a claim against the entity, bringing an official capacity claim against Bhatia is redundant and should be dismissed.

is a prosecutorial function. *See, e.g., Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009) (concluding that establishing an administrative index for prosecutors to access information on confidential informants and impeachment information, was a prosecutorial function because it involved knowledge of the law and exercise of legal judgment). Prosecutorial policies determine how prosecutorial work will be done in specific prosecutions. Additionally, establishing prosecutorial policy requires legal knowledge and prosecutorial discretion on issues such as whether to prosecute, what to charge a criminal defendant with, when to make an offer, or what terms to offer.

Jackson faults the MCAO Defendants for prosecuting him and alleges that the MCAO prosecutes protestors for expressing their First Amendment rights as part of a scheme to force the protestors "to take harsh plea deals." (Doc. 14 at 7-9.) As the County Attorney is a state official when functioning as a prosecutor, her "actual function" in establishing policy related to charging crimes and offering plea bargains is that of a State—not County—official. Accordingly, Jackson § 1983 *Monell* claim against the County Attorney must be dismissed.

      **C.**    **11th Amendment sovereign immunity bars § 1983 claims for damages against the County Attorney in her official capacity.**

Because the County Attorney acts on behalf of the State—not the County—when she establishes prosecutorial policy, the 11th Amendment sovereign immunity bars Jackson's claims for monetary damages against the State of Arizona or a State official in her official capacity. *See Will*, 491 U.S. at 71; *Edelman v. Jordan*, 415 U.S. 651 (1974); *see also*, *Curry v. Cnty. of Los Angeles*, No. CV 07-7802-VAP (RNB), 2009 WL 1684578 *13 & n.5 (C.D. Cal. June 16, 2009) (holding *Monell* claims failed and 11th Amendment barred official capacity claims against prosecutor). Sovereign immunity is jurisdictional. Because the Court lacks subject matter jurisdiction, Jackson's § 1983 official capacity claims must be dismissed under Rule 12(b)(1).

      **D.**    **Jackson fails to allege facts to support his *Monell* claims.**

To establish a *Monell* claim, a plaintiff must prove "(1) that the plaintiff possessed a constitutional right of which [] he was deprived; (2) that the municipality had a policy;

(3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted). Jackson's *Monell* claims fail because the SAC does not allege facts about 1) MCAO policies/customs/procedures; 2) facts indicating deliberate indifference to Jackson's constitutional rights; or 3) facts showing that his constitutional injury was the result of an MCAO policy/practice/procedure. Accordingly, Jackson's *Monell* claims must be dismissed.

    1.     **First Amendment claims.**

Jackson's *Monell* claim for suppression of his First Amendment rights through a targeted prosecution fails because there are no allegations indicating that the MCAO has a policy, practice, or custom of targeting protestors for exercising their First Amendment rights. The SAC alleges that the MCAO "falsely indicted" a group of October 17, 2020 protestors with "assisting a criminal street gang," and "falsely indicted" Jackson when he was charged with weapons manufacturing and other felonies. (Doc. 14 at 9.) These allegations do not allege a plausible *Monell* claim. First, Jackson does not identify an MCAO policy that states protestors should be charged with criminal offenses because they are protestors. Second, the MCAO is a prosecutor's office, and charging protestors with criminal offenses, without more, does not show a practice of targeting protestors for exercising their First Amendment rights. Third, there are no allegations that support a custom of falsely charging protestors to suppress their First Amendment rights. "[L]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Less than 90 days separates the alleged October 17, 2020 protests and Jackson's December 8, 2020 charges. Such a period can hardly be considered a "sufficient duration" or characterized as the "traditional method of carrying out policy." Moreover, the only similarities between Jackson and the October 17, 2020 protesters are:

1) they were protestors; 2) they were charged with criminal offenses. Unlike the October 17, 2020 protestors, however, Jackson was indicted for hindering prosecution, misconduct involving weapons, and resisting arrest, not "assisting a criminal street gang." (Doc. 14 at 9; Ex. 2.) Accordingly, the SAC contains no allegations from which to infer a custom, practice, or policy of targeting protestors for exercising their First Amendment rights by "falsely" indicting them.

Jackson also alleges that the FBI used "big tech" to target and censor certain individuals on the internet in violation of the First Amendment. (Doc. 14 at 10.) Jackson alleges that throughout his case, the FBI monitored his social media posts, asked social media companies to ban him from their platforms, and had him banned from other websites. (*Id*.) The SAC does not allege facts linking any MCAO policy, practice, or custom to the alleged monitoring, deplatforming, and banning from websites. Without factual allegations showing an MCAO policy exists or linking the MCAO in some policymaking capacity to the alleged monitoring, deplatforming or banning, Jackson cannot show that his claim of censorship or targeted investigation against the MCAO are plausible, and he fails to state a *Monell* claim.

    **2.  Second Amendment claims.**

Jackson fails to allege a claim that an MCAO policy, practice or custom deprived him of his Second Amendment rights. After Jackson was charged with hindering prosecution and resisting arrest on December 8, 2020, the FBI executed a search warrant at Jackson's home on December 12, 2020, and seized guns, computers and cell phones pursuant to a warrant. (Doc. 14 at 8; Ex. 2.) According to the SAC, Jackson's antique guns and other personal property were seized without a warrant. (Doc. 14 at 8.) Other firearms were seized pursuant to a warrant. (Doc. 14 at 8.) Jackson further alleges that the FBI's Joint Terrorism Task Force which "targeted Jackson and other U.S. Citizens to strip them of their Constitutional rights," "was directly involved with the investigation into Jackson and other U.S. Citizens cases," and that the "FBI targets those who support the Second Amendment and label them as 'Domestic Terrorists' to pursue a political agenda." (*Id*. at

9-10.)

The SAC does not allege that Jackson's firearms were seized due to MCAO policy, practice, or custom. Rather, the SAC alleges his firearms were seized after a search warrant was executed at his residence. (*Id*. at 8.) Additionally, the SAC does not allege that the MCAO targeted/labeled him a "Domestic Terrorist" or that he was targeted/labeled as such pursuant to an MCAO policy, practice, or custom. Rather, Jackson attributes the policies and practices he finds objectionable to the Presidency and various federal agencies. (*Id*. at 9-11.) As Jackson does not allege that MCAO policy, practice or procedure caused his alleged Second Amendment deprivation(s), he fails to state a *Monell* claim against the MCAO Defendants.

### 3. Fourth Amendment claims.

The Fourth Amendment requires officers to use only reasonable force when making an arrest. *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (citing *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985). Jackson was arrested after a standoff with police on December 4, 2020. (Doc. 14 at 8.) Multiple police departments were involved, and a rubber grenade launcher was deployed to effectuate Jackson's arrest. (*Id*.) The SAC does not allege that MCAO had a policy, practice, or custom of using excessive force against arrestees, that the rubber grenade launcher was deployed pursuant to MCAO policy, practice, custom, or direction. Nor are there allegations that an MCAO Defendant or employee deployed the rubber grenade launcher. Accordingly, there are no allegations linking the use of force to MCAO policy, practice, or custom. Even if Jackson alleged that an MCAO employee deployed the rubber grenade launcher, a *Monell* claim cannot be based on an individual employee's actions, Jackson must allege that the excessive force was the product of a policy, custom or practice of the MCAO. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Jackson has not done so and as such, fails to state a *Monell* claim for excessive force against the MCAO Defendants.

The Fourth Amendment requires that all searches and seizures be reasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011). Jackson's vehicle and property were seized

when he was arrested on December 4, 2020. (Doc. 14 at 8.) Other articles of personal property were seized when a search warrant was executed at his home on December 12, 2020. (*Id*.) Jackson does not allege that his residence was searched, and his personal property seized pursuant to MCAO's directive, policy, practice or custom. While the SAC alleges that MCAO investigators were assigned to an FBI Joint Task Force, there are no allegations indicating that they were acting pursuant to MCAO policy, practice or procedure and a *Monell* claim may not be based on *respondeat superior* liability. Additionally, Jackson makes no allegations showing that the seizure of his person was unreasonable. Rather, Jackson was arrested after a standoff. (Doc. 14 at 8.) Thus, there are no facts from which to infer that Jackson's arrest was unreasonable.

Because Jackson does not allege facts linking his Fourth Amendment claims to an MCAO policy, practice, or custom, his *Monell* claim against the MCAO Defendants fail.

### 4. Fifth Amendment claims.

Jackson's claim that by charging him in CR2022-006716 after CR2020-145527 was dismissed, the MCAO Defendants violated his Fifth Amendment rights fails because jeopardy never attached. In a jury trial, jeopardy attaches when a jury is empaneled and sworn. *Serfass v. U.S.*, 420 U.S. 377 at 388 (citing *Downum v. U.S.*, 372 U.S. 734 (1963)). In a court trial, jeopardy attaches when the court begins to hear evidence. *Serfass*, 420 U.S. at 388 (citing *McCarthy v. Zerbst*, 85 F.2d 640, 642 (CA10 1936)). Jackson neither alleges that a jury was empaneled and sworn nor that he was subject to a jury trial. Rather, Jackson alleges that "the charges were dropped" and court records indicate the charges were dismissed without prejudice. (Doc. 14 at 7; Ex. 3.) To state a plausible *Monell* claim, a plaintiff must allege an underlying constitutional violation. Because he was never subject to jeopardy Jackson fails to allege a *Monell* claim based on a Fifth Amendment violation.

### V. To the extent Jackson makes claims for damages arising out of an ongoing prosecution, his claim must be dismissed or stayed.

"In *Younger v. Harris*, the Supreme Court reaffirmed the long-standing principle that federal courts sitting in equity cannot, absent exceptional circumstances, enjoin

pending state criminal proceedings." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014) (citing *Younger*, 401 U.S. 37, 43–54 (1971)). In *Gilbertson v. Albright*, the Ninth Circuit held that *Younger* abstention applied to § 1983 claims for damages that relate to a pending state proceeding. *Gilbertson*, 381 F.3d 965, 968 (2004). Rather than dismissal, however, "damages actions should be stayed until the state proceedings are completed." *Id*. "Absent extraordinary circumstances, *Younger* abstention is required if the state proceedings are (1) ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims." *San Remo Hotel v. City & Cty. of San Francisco*, 145 F.3d 1095, 1103 (9th Cir. 1998).

  **1. There is an ongoing state proceeding.**

"'The critical question is not whether the state proceedings are still ongoing, but whether the state proceedings were underway before initiation of the federal proceedings.'" *Logan v. U.S. Bank Nat. Ass'n*, 722 F.3d 1163, 1167 (9th Cir. 2013) (quoting *Kitchens v. Bowen*, 825 F.2d 1337, 1341 (9th Cir. 1987) (internal quotation marks and citation omitted)) (emphasis added). "[T]he date for determining whether *Younger* applies is the date the federal action is filed[.]" *ReadyLink Healthcare*, 754 F.3d at 759 (internal quotation marks and citation omitted). Jackson and Maricopa County Superior Court records confirm that he was charged in August 2022 for hindering prosecution and passive resistance; that case is still pending. Jackson initiated these proceedings in November 2022, after the CR2022-006717-001 case was filed. Thus, the first requirement for *Younger* abstention is satisfied.

  **2. Jackson is alleged to have violated Arizona criminal statutes.**

The second requirement for *Younger* abstention is satisfied because Jackson is accused of violating Arizona's criminal statutes. *Kelly v. Robinson*, 479 U.S. 36, 49 (1986) ("[T]he States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court granting equitable types of relief") (citing *Younger*, 401 U.S. at 44-45).

### 3. Jackson can raise his Double Jeopardy claim in the state proceeding.

Jackson has not challenged the indictment in CR2022-006716-001 on Fifth Amendment grounds. "[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy [for constitutional issues that arise], in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). Accordingly, if Jackson is served with the criminal complaint in CR2022-006716-001, he can raise his Double Jeopardy objections in that proceeding.

### 4. There is no harassment or Double Jeopardy issue here.

"[A]n exception to abstention applies if the state proceedings demonstrate 'bad faith, harassment, or some other extraordinary circumstances that would make abstention inappropriate.'" *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 617 (9th Cir. 2003) (quoting *Kenneally v. Lungren*, 967 F.2d 329, 331 (9th Cir. 1992) (internal quotation marks omitted)). While Jackson alleges that Bhatia is prosecuting him because of a personal vendetta, he does not allege any facts to support such a conclusion. (*See generally*, Doc. 14.) "A claim that a state prosecution will violate the Double Jeopardy Clause presents an exception to the general rule of *Younger* ...." *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992). But Jackson does not raise a colorable Double Jeopardy claim. "In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn." *Serfass*, 420 U.S. at 388. Jackson does not allege that he went to trial on the charges in CR2020-145527-001. (Doc. 14.) Nor does he allege that a jury was empaneled and sworn in CR2020-145527-001. *Id*. State court records show that jeopardy had not attached in CR2020-145527-001 because it was dismissed without prejudice before a jury was empaneled. (Ex. 1, 3.) Jackson was subsequently charged in CR2022-006716-001. (Ex. 4) As jeopardy never attached to the charges in CR2020-145527-001, if the charges in CR2022-006716-001 are the same charges that Jackson "had already beat," the CR2022-006716-001 charges do not violate Double Jeopardy.

As discussed in the preceding paragraph and section IV.D.4 above, Plaintiff's Fifth Amendment claim should be dismissed because he fails to state a claim. And to the extent

the court concludes that Jackson has alleged a plausible Fifth Amendment claim for a Double Jeopardy claim, it should be stayed pursuant *Younger* and *Gilbertson*.

**VI.    Conclusion.**

For all the foregoing reasons, Jackson's claims against the MCAO Defendants should be dismissed.

RESPECTFULLY submitted this 3rd day of March 2023.

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

BY:    s/Maxine Mak
MAXINE S. MAK
ANGELA D. LANE
Deputy County Attorneys
*Attorneys for Defendants Bhatia and Maricopa County Attorney Rachel H. Mitchell*

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2023, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and a copy to be served by U.S. Postal Mail to the following non-registered participant:

BRANDON GLEN JACKSON
6208 S 44TH AVE
LAVEEN AZ 85339
*PRO SE*

s/*J. Christiansen*

s:\CIVIL\CIV\Matters\RM\2023\Jackson v FBI 2023-0222\Pleadings\MTD.docx