JDN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT

OF ARIZONA

| | |
|---|---|
| Brandon Glen Jackson, | No. CV-22-01898-PHX-JJT (ESW) |
| Plaintiff, | |
| vs. | **ORDER** |
| Federal Bureau of Investigation, *et al.*, | |
| Defendants. | |

Plaintiff Brandon Glen Jackson brought this pro se civil rights action under 42 U.S.C. § 1983, 28 U.S.C. § 1331, and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against the following Defendants: (1) the Maricopa County Attorney's Office (MCAO), (2) County Attorney Rachel Mitchell, (3) Deputy County Attorney Neha Bhatia, (4) the Federal Bureau of Investigation (FBI), (5) the FBI Phoenix Field Office, (6) Special Agent Jason L. Saitta, and (7) Special Agent Jennifer Baniszweski. (Doc. 14.)[1]

Before the Court are Defendants MCAO, Mitchell, and Bhatia's ("County Defendants") Motion to Dismiss and Motion for Judicial Notice (Doc. 17), Plaintiff's Motion to Amend his Third Amended Complaint (Doc. 23), and Plaintiff's Motion for

---

[1] On October 4, 2023, the Court issued an Order setting a November 3, 2023 deadline for Plaintiff to complete service on the FBI Defendants. (Doc. 32.)

Hearing (Doc. 26). The Court will grant County Defendants' Motion for Judicial Notice and Motion to Dismiss, deny Plaintiff's Motion for Hearing, and deny Plaintiff's Motion to Amend without prejudice to refiling.

**I.  Background**

On February 9, 2023, Plaintiff filed his Third Amended Complaint against the above-named Defendants. (Doc. 14.)[2] His claims arose in late 2020 through 2022. (*Id.* at 8.) Plaintiff alleged that following his involvement in group protests at different locations, the FBI targeted him based on his political beliefs and his affiliation with a group known as "The Boogaloo," and the MCAO initiated a wrongful prosecution. (*Id.* at 8–10.) Plaintiff brought claims pursuant to § 1983 and *Bivens* for alleged violations of his First, Second, Fourth, and Fifth Amendment rights. (*Id.* at 3–4.) Plaintiff seeks injunctive relief and monetary damages. (*Id.* at 12.)

County Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that: (1) absolute prosecutorial immunity bars a § 1983 claim against Defendant Bhatia; (2) Plaintiff fails to allege a § 1983 *Monell* claim; (3) Eleventh Amendment sovereign immunity bars a *Monell* claim for damages against Defendant Mitchell; (4) Plaintiff fails to allege *Monell* claims for violations of the First, Second, Fourth, and Fifth Amendments; and (5) the *Younger* abstention doctrine requires the Fifth Amendment claim to be stayed. (Doc. 17.)

**II.  Motion for Judicial Notice**

County Defendants move the Court to take judicial notice of five Exhibits, which include the copies of the docket, Direct Complaint, and a Minute Entry in Plaintiff's state

---

[2] It does not appear from the docket that Plaintiff was granted leave to file a Third Amended Complaint. Even though County Defendants refer to the "Second Amended Complaint" or "SAC" within their Motion, their "Motion to Dismiss (Doc. 14)" is directed to the Third Amended Complaint (Doc. 14) and cites only to the Third Amended Complaint. (Doc. 17.) The Court construes this as the opposing party's consent to amendment and will treat the Third Amended Complaint as the operative complaint. *See* Fed. R. Civ. P. 15(a)(2).

- 2 -

court proceeding CR2020-145527, and the Direct Complaint and Release Order in Plaintiff's subsequent state court proceeding CR2022-006716. (Doc. 17-1 at 3–25.)

A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (internal quotation omitted). Judicial notice of court records is routinely accepted. *See, e.g., Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635, n.1 (N.D. Cal. 1978). Specifically, courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (quoting *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)).

As Defendants note, Plaintiff references his state court proceedings in his amended pleading, and some of his claims are directly related to those proceedings. (*See* Doc. 14 at 8.) Therefore, the Court will grant Defendants' Motion for Judicial Notice and take judicial notice of the court records attached to the Motion to Dismiss.

**III.     Federal Rule of Civil Procedure 12(b)(6)**

Dismissal of a complaint, or any claim within it, for failure to state a claim under Rule 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted). To survive

a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A motion to dismiss is based on the pleadings, and if a court considers evidence outside the pleadings, it must normally convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *See* Fed. R. Civ. P. 12(b); *United States v. Richie*, 342 F.3d 903, 907–08 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## IV.     Motion for Hearing

Plaintiff requests a hearing on County Defendants' Motion to Dismiss and his Motion to Amend. (Doc. 26.) As stated, a motion to dismiss is based on the pleadings; thus, apart from the state court documents of which the Court takes judicial notice, the Court looks only at the face of the Third Amended Complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("[o]rdinarily, a court may look only at the face of the complaint to decide a motion to dismiss"). As set forth below, Plaintiff's Motion to Amend is denied because he failed to attach a proposed amended pleading as required under the Local Rules. In the circumstances, a hearing is unnecessary before ruling on the parties' Motions. *See* Fed. R. Civ. P. 78(b) ("[b]y rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings"); *Novak v. United States*, 795 F.3d 1012, 1023 (9th Cir. 2015) (due process does not require a court to hold a hearing on a party's motion to dismiss). Plaintiff's Motion for Hearing will therefore be denied.

## V.      Third Amended Complaint

In his amended pleading, Plaintiff sets forth the following facts:

Plaintiff is a member of a group known as the "Boogaloo," a group of Anarchist/Libertarian-minded individuals who heavily support the Second Amendment and believe in self-governance. (Doc. 14 at 10.) Between October and December 3, 2020, Plaintiff joined this group at protests at various locations, including the FBI Headquarters, the State Capitol, and the County Elections Center in Phoenix. (*Id.* at 8.)

On December 4, 2020, the FBI watched Plaintiff at his residence, followed him to a protest at the State Capital, worked with other law enforcement to try to arrest Plaintiff, "flash banged" Plaintiff, and shot him in the groin with a rubber grenade launcher. (*Id.*) Plaintiff's vehicle and property in the vehicle were damaged and seized without a warrant. (*Id.*)

On December 8, 2020, Defendant Bhatia filed a criminal complaint against Plaintiff in Maricopa County Superior Court for (1) conspiracy to commit misconduct involving weapons, (2) misconduct involving weapons, (3) resisting arrest, and (4) hindering prosecution. (Doc. 17-1 at 12–14.)

The complaint led to the FBI Joint Terrorism Task Force—including Defendants Special Agents Baniszweski and Saitta—conducting a search on Plaintiff's residence on December 12, 2020; the search was for "weapons manufacturing." (Doc. 14 at 8.) A Phoenix swat team participated in the raid and damaged Plaintiff's residence. (*Id.*) Guns, personal computers, and cell phones were seized with the warrant; however, work computers, antique guns, and cryptocurrency were also seized even though those items were not listed in the warrant for seizure. (*Id.*) On May 25, 2022, all charges against Plaintiff were dismissed with prejudice. (*Id.*; *see* Doc. 17-1 at 17.)

Although the charges were dismissed, as a result of Defendants' actions, Plaintiff lost his job, house, cryptocurrency, and his career, and he was slandered as a "domestic terrorist," which caused him to be censored on the internet. (Doc. 14 at 8.)

In July 2022, the State moved for reconsideration of the May 2022 dismissal order, arguing that dismissal should have been without prejudice. (Doc. 17-1 at 17-18.) The

Motion for Reconsideration was granted, and Plaintiff's prior indictment was dismissed without prejudice in its entirety. (*Id.* at 18.)

On August 30, 2022, Defendant Bhatia filed another criminal complaint against Plaintiff for (1) conspiracy to commit hindering prosecution and (2) resisting arrest—passive resistance. (Doc. 17-1 at 20–21.) Plaintiff was neither served nor given notice of the new complaint; therefore, on October 24, 2022, the court issued a warrant for his arrest. (Doc. 14 at 8.) Plaintiff's criminal trial is scheduled for November 9, 2023.[3]

Plaintiff alleges that Defendants' actions violated his rights under the First, Second, Fourth, and Fifth Amendments. (*Id.*)

**VI.  Discussion**

    **A.  Defendant Bhatia**

County Defendants argue that Plaintiff's claims against Bhatia are barred by absolute prosecutorial immunity. (Doc. 17 at 4–5.)

        **1.  Legal Standard**

Prosecutors are absolutely immune from liability in § 1983 lawsuits for acts that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012). Absolute prosecutorial immunity is based on the theory that "it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Van de Kamp v. Goldstein*, 555 U.S. 335, 340–41 (2009) (quotation omitted). Consequently, prosecutors have absolute prosecutorial immunity for inadvertent or negligent acts as well as for acts that constitute a willful or malicious violation of the constitutional rights of the accused. *See Imbler*, 424 U.S. at 428, 431 n.34.

. . . .

---

[3] *See* Maricopa County Superior Court, July 25, 2023 Minute Entry, https://courtminutes.maricopa.gov/viewerME.asp?fn=Criminal/092023/m10577884.pdf (last visited Oct. 3, 2023).

- 6 -

But a prosecutor's conduct is not covered by absolute immunity merely because it was performed by a prosecutor. *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). Prosecutorial immunity "depends on the nature of the function performed, not the identity of the actor who performed it." *Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003) (citing *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)). When determining the "nature of the function performed," the essential question is whether the alleged unconstitutional act was "intimately associated with the judicial phase of the criminal process." *Genzler*, 410 F.3d at 637 (citations omitted). Acts taken in the course of a prosecutor's role as an advocate are entitled to absolute immunity. *Buckley*, 509 U.S. at 273. For example, acts taken by a prosecutor to determine whether to bring charges and to prepare for the initiation of judicial proceedings or for trial are actions occurring within the role of an advocate and are entitled to absolute immunity. *Faulkner v. Cnty. of Kern*, No. 1:04-CV-05964 OWWTAG, 2006 WL 1795107, at *19 (E.D. Cal. June 28, 2006) (citing *Buckley*, 509 U.S. at 269, and *Demery v. Kupperman*, 735 F.2d 1139, 1144 (9th Cir. 1984)). However, a prosecutor performing administrative functions or "investigative functions normally performed by a detective or police officer" is only entitled to qualified immunity. *Genzler*, 410 F.3d at 636.

In evaluating the facts on the question of immunity, courts must resolve any ambiguities in favor of the plaintiff. *Id.* at 642. The defendant prosecutor bears the burden of showing that, based on the nature of the function performed, absolute immunity is justified. *Buckley*, 509 U.S. at 269. "[T]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Genzler*, 410 F.3d at 636–37 (internal citation omitted).

**2.  Analysis**

Plaintiff's allegations against Bhatia are that she suppressed exonerating evidence, falsely charged him, pursued a personal vendetta by re-charging him, and wrongfully prosecuted him. (Doc. 14 at 7–8.) All of Defendant Bhatia's alleged acts are actions taken within the role of a prosecutor and are therefore protected by absolute immunity. *See*

*Imbler*, 424 U.S. at 431 (prosecutor has absolute immunity for initiating a prosecution); *Kalina*, 522 U.S. at 129 (a prosecutor's conduct in connection with the preparation and filing of charging documents is protected by absolute immunity); *Broam*, 320 F.3d at 1030 (the failure to preserve or turn over exculpatory evidence is "an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages"). Further, whether Defendant Bhatia was motivated by a personal vendetta against Plaintiff is irrelevant; "[t]he intent of the prosecutor when performing prosecutorial acts plays no role in the immunity inquiry." *McCarthy v. Mayo*, 827 F.2d 1310, 1315 (9th Cir. 1987); *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) ("[i]ntent should play no role in the immunity analysis. . . . Moreover, allegations that a conspiracy produced a certain decision should no more pierce the actor's immunity than allegations of bad faith, personal interest or outright malevolence").

In his Response, Plaintiff asserts that Defendant Bhatia acted as an investigator for the FBI when attempting to ascertain ownership of a firearm and that Bhatia had to investigate Plaintiff and a co-defendant to determine the nature of their "plan." (Doc. 23 at 2–3, 5.) Plaintiff also alleges that Defendant Bhatia's conduct in a recorded phone call with an FBI agent, in which Bhatia agreed to pursue Plaintiff with the FBI and laughed about it, shows malice on her part. (*Id.* at 3.) Plaintiff argues that these actions by Defendant Bhatia are not entitled to absolute immunity. (*Id.* at 2–3.) It is not clear, however, that these additional facts presented by Plaintiff are sufficient to show that Defendant Bhatia was performing investigative or administrative functions rather than prosecutorial functions. Regardless, Plaintiff's additional facts are not part of the Third Amended Complaint, and allegations in the Response do not serve to amend the complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994) (on a Rule 12(b)(6) motion, review is limited to the contents of the complaint).

Accordingly, the claims in the Third Amended Complaint against Defendant Bhatia are barred by absolute prosecutorial immunity and will be dismissed.

**B.     Defendant Mitchell**

Plaintiff asserts that Defendant Mitchell's position as the Maricopa County Attorney is the basis for naming her as a Defendant; thus, Mitchell is sued in her official capacity. (Doc. 14 at 7.) Plaintiff alleges that, upon taking office, Defendant Mitchell continued an MCAO policy of unlawfully targeting citizens who exercise their First Amendment right to protest. (*Id.* at 8-9.) Plaintiff further alleges that the County Attorney charges protesters with false felonies and then attempts to force those charged to take harsh plea deals. (*Id.* at 9.)

County Defendants argue that the official capacity claim against Defendant Mitchell must be dismissed because the County Attorney is a state official when establishing and implementing prosecutorial policy and acts on behalf of the state when prosecuting criminal offenses; therefore, the County Attorney is entitled to Eleventh Amendment immunity. (Doc. 17 at 5–6.)

Sovereign immunity under the Eleventh Amendment extends to state officials sued in their official capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989) (finding that state officials acting in their official capacity do not qualify as "persons" within the meaning of § 1983 because "a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office"). Although sovereign immunity generally does not extend to local governmental bodies, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), local officials qualify for sovereign immunity when they act on behalf of the state, rather than local government. *See McMillian v. Monroe County, Alabama*, 520 U.S. 781, 785–86 (1997).

To determine whether the County Attorney acted as a policymaker for the state or for the county, the Court applies a "function-by-function" approach that analyzes under Arizona law the organizational structure and control over the County Attorney. *Goldstein v. City of Long Beach*, 715 F.3d 750, 753 (9th Cir. 2013). "Ordinarily, an official designated as an official of a county . . . is a county official for all purposes." *Platt v. Moore*, No. CV-16-08262-PCT-BSB, 2018 WL 2058136, at *17 (quoting *Ceballos v. Garcetti*, 361 F.3d 1168, 1182 (9th Cir. 2004)), *aff'd in part and rev'd in part on other grounds* 14 F.4th 895

(9th Cir. 2021). "Under Arizona law, a county attorney is an officer of the county." *Id.* (citing Ariz. Rev. Stat. § 11-401). "However, some county officials may serve the county and the state." *Id.* "In this situation, the court determines whether the officer is a state or county official by reviewing state law to determine whether the officer's alleged actions fit within the range of his state or county functions." *Id.*

This Court has recognized that, "in most situations a county attorney appears to be acting as a local official, reporting to a local board of supervisors and subject to control by the local board of supervisors." *Milke v. Cty. of Phoenix*, No. CV-15-00462-PHX-ROS, 2016 WL 5339693, at *16–17. But under Arizona Revised Statutes § 11-532, a county attorney must "[a]ttend the superior and other courts within the county and conduct, *on behalf of the state*, all prosecutions for public offenses" (emphasis added). Therefore, the County Attorney is acting on behalf of the state when prosecuting crimes. *Milke*, 2016 WL 5339693, at *17. Courts have found that a district attorney acts for the state when deciding whether to prosecute, preparing to prosecute, prosecuting crimes, and establishing policy and training employees in these areas. *See Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1031 (9th Cir. 2000); *Del Campo v. Kennedy*, 491 F. Supp. 2d 891, 899 (N.D. Cal. Dec. 5, 2006).

Accordingly, the County Attorney's decision to charge and prosecute Plaintiff and other protesters falls within actions that are conducted on behalf of the state.

The Ninth Circuit has referred to plea agreements as between "an individual and a party acting on behalf of the state." *Breaseale v. Victim Servs., Inc.*, 878 F.3d 759, 768 (9th Cir. 2017) (finding that the Federal Arbitration Act does not apply "where the underlying agreement is a plea agreement, quasi-plea agreement, or deferred prosecution agreement between an individual and a party acting on behalf of the state"); *see Walker v. Marshall*, 168 F.3d 504 (9th Cir. 1999) (referring to "a plea agreement between the State and Appellant's co-defendant"). Thus, to the extent Plaintiff alleges the County Attorney engaged in unlawful plea negotiations, that would also constitute an action conducted on behalf of the state.

Because the County Attorney's decision to file a complaint against Plaintiff and the plea negotiations with Plaintiff were actions taken on behalf of the state, Eleventh Amendment immunity applies, and the official capacity claim against the County Attorney will be dismissed.

### C. MCAO

In *Monell*, the Supreme Court held that a local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694; *see Connick v. Thompson*, 563 U.S. 51 (2011) ("local governments are responsible only for their own illegal acts"). A municipality cannot be held vicariously liable for its employees' actions. *Connick*, 563 U.S. at 60 (citations omitted).

To state a claim for *Monell* liability, a plaintiff must allege a constitutional injury that results from a custom or policy of the municipality or from a failure to train. *Monell*, 436 U.S. at 690–91; *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Where *Monell* liability is based on a policy or custom, a plaintiff must allege several threshold requirements: "(1) that [the plaintiff] possessed a constitutional right of which [they were] deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

To show a policy, a plaintiff may point to a written policy or unwritten practices that are "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *see Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). A plaintiff must allege more than a one-time incident; he or she must allege "the existence of a pattern of tortious conduct by inadequately trained employees." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S.

- 11 -

397, 407–08 (1997); *see City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (holding "[p]roof of a single incident of unconstitutional activity is not sufficient to impose [municipal] liability" under a failure-to-train theory).

County Defendants argue that Plaintiff's *Monell* claims against the MCAO fail because he did not allege facts about any policy, custom, or procedure nor did he allege facts showing a constitutional injury resulting from an MCAO policy, practice, or procedure. (Doc. 17 at 8.)

### 1.     First Amendment Claim

To state a claim for a First Amendment violation, a plaintiff must plead facts showing that the defendant's conduct "deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994)). The question is whether the official's acts would "would chill or silence a person of ordinary firmness from future First Amendment activities." *Id.* (citations and quotation marks omitted). To support a First Amendment claim against the MCAO, Plaintiff must allege that his constitutional injury was inflicted pursuant to an MCAO policy, practice, or custom. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc) (quoting *City of Canton*, 489 U.S. at 385).

Plaintiff alleges that his First Amendment rights were violated when he, along with two other protesters, were targeted and falsely indicted on charges of "weapons manufacturing" and other felony and misdemeanor charges. (Doc. 14 at 9.) He alleges that, previously, in October 2020, the MCAO falsely indicted a group of protesters for "assisting with a criminal street gang." (*Id.*) Plaintiff states that there were different prosecutors in his case and the October 2020 case, thereby supporting that multiple prosecutors in the MCAO target citizens who exercise their First Amendment right to protest. (*Id.*)

Plaintiff does not allege any formal or written MCAO policy to target and charge protesters in violation of their First Amendment rights. Plaintiff's allegations regarding

false indictments against protesters in October 2020 and his own false indictment in December 2020 are insufficient to show that the MCAO was acting pursuant to a policy or custom. The Ninth Circuit and district courts within the Ninth Circuit have repeatedly declined to infer a custom of constitutional violations based on two unconstitutional incidents alone. *See, e.g.*, *Meehan v. Cty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) ("[p]roof of [two prior] unconstitutional assaults by [law enforcement] agents . . . standing alone, does not support a finding of liability against the County"); *Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) ("one or two incidents are insufficient to establish a custom or policy"); *Bagley v. City of Sunnyvale*, 2017 WL 5068567, at *5 (N.D. Cal. Nov. 3, 2017) ("[p]laintiff cites no cases suggesting that vague reports of two incidents are sufficient to deny a motion to dismiss a *Monell* claim. Where courts have allowed *Monell* claims to proceed at the motion to dismiss stage, plaintiffs have pled multiple incidents of alleged violations"); *Mendy v. City of Fremont*, No. C-13-4180 MMC, 2014 WL 1760226, at *3 (N.D. Cal. Apr. 2, 2014) ("allegations that several officers on a few occasions failed to conform their behavior to the adequate training they received is not sufficient to plead a municipal policy, practice or custom"); *Wilkins v. City of Tempe*, No. CV 09-00752-PHX-MHM, 2010 WL 94116, at *4 (D. Ariz. Jan. 6, 2010) ("[e]ven assuming the truth of these allegations, it is unreasonable to infer a policy or custom . . . based on the filing of two lawsuits"). Consequently, Plaintiff fails to allege a policy or custom that caused his alleged First Amendment violation, and his *Monell* claim against MCAO based on a First Amendment violation will be dismissed.

        **2.**     **Second Amendment Claim**

The Second Amendment protects the individual right to keep and bear arms for the purpose of self-defense. *McDonald v. City of Chicago*, 561 U.S. 742, 749–50 (2010). The individual right under the Second Amendment is incorporated against states and municipalities under the Fourteenth Amendment. *Nordyke v. King*, 681 F.3d 1041, 1043–44 (9th Cir. 2012) (citing *Dist. of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, ––– U.S. –––, 130 S. Ct. 3020 (2010)). Importantly, this right is limited:

for example, the government may forbid certain individuals from possessing firearms, *Heller*, 554 U.S. at 626, and may seize firearms for certain purposes. *Sutterfield v. City of Milwaukee*, 870 F. Supp. 2d 633, 642 (E.D. Wis. 2012) ("[n]either *Heller* nor *McDonald* prohibit the government from seizing firearms for certain purposes") (internal citations omitted).

In his amended pleading, Plaintiff stated that guns were seized with the warrant but that antique guns, which were not part of the warrant, were also seized. (Doc. 14 at 8.) Plaintiff alleged that his Second Amendment right to possess firearms and "creation of a firearm" were infringed. (*Id.* at 3, 8.) But he acknowledged that there was a valid warrant that included a search for guns. (*See id.* at 8.) "The mere occurrence of a firearm seizure . . . is not enough to establish a Second Amendment violation." *Partin v. Gevatoski*, No. 6:19-CV-1948-AA, 2020 WL 4587386, at *4 (D. Or. Aug. 10, 2020) ("[p]olice seize and confiscate firearms routinely, and this Court will not presume that each and every one of those seizures is an automatic Second Amendment violation without specific facts indicating such"). Without more, Plaintiff does not allege facts—beyond that a seizure occurred—that implicate his Second Amendment rights. Nor does he allege that an MCAO policy or custom led to a Second Amendment violation. Plaintiff's *Monell* claim against the MCAO based on a Second Amendment violation will therefore be dismissed.

### 3. Fourth Amendment Claims

The Fourth Amendment "guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (alterations in original). Such claims are "analyzed under the Fourth Amendment's 'objective reasonableness standard.'" *Id.* at 388. The determination of whether an officer's use of force was "reasonable" under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Id.* at 396 (internal quotations omitted); *see Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001) ("the force which is applied must be balanced against the need for that force") (as

amended). This analysis requires "careful attention to the facts and circumstances in each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. In determining whether the force used was "reasonable" under the Fourth Amendment, the court looks at the facts and circumstances confronting the officers, "without regard to their underlying intent or motivation." *Id.* at 397.

Plaintiff alleged that he was subjected to the use of force at a protest on December 4, 2020, when he was "flashed banged and shot with a rubber grenade launcher round" in his groin. (Doc. 14 at 3, 4, 8.) Plaintiff alleged that the December 4, 2020 incident involved the FBI and multiple different police departments; however, he does not allege who used force against him. (*See id.* at 8.) Thus, he fails to sufficiently state a claim for use of excessive force. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (a plaintiff must allege a specific injury and show a causal relationship between a defendant's conduct and that injury). Plaintiff also fails to allege that the MCAO had a policy or practice encouraging the use of force against civilians or protesters, or that the FBI or other law enforcement agencies used force against Plaintiff pursuant to a MCAO policy or custom. In light of Plaintiff's limited facts, he fails to state a *Monell* claim against the MCAO for use of excessive force.

Plaintiff also alleges a Fourth Amendment claim stemming from the search of his home and confiscation of his property. (Doc. 14 at 3–4, 8.) A seizure of property occurs when there is some meaningful interference with an individual's possessory interest in that property. *Lavan v. Cty. of L.A.*, 693 F.3d 1022, 1027 (9th Cir. 2012) (citing United *States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Generally, whether a seizure is unreasonable under the Fourth Amendment depends upon the facts and circumstances of each case. *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) (citing *Cooper v. California*, 386 U.S. 58, 59 (1967)).

Plaintiff's allegations are limited regarding the facts and circumstances of the December 12, 2020 search of his home, except that work computers, antique guns, and cryptocurrency not listed in the search warrant were seized. (Doc. 14 at 8.) Assuming, arguendo, that Plaintiff's allegation supports a constitutional violation,[4] he failed to allege that the items were seized pursuant to an MCAO policy or practice to conduct illegal searches and seizures. Plaintiff alleged that "other raids on other U.S citizens occurred" during the same time frame, and that these raids and seizures violated the Fourth Amendment. (Doc. 14 at 8.) But these general allegations fail to show that the unknown number of other raids and searches included the unlawful seizure of property not listed in the search warrants or that there were enough similar unlawful seizures to support that these seizures were pursuant to a policy or practice, much less a policy or practice promulgated by the MCAO. *See McDade v. West*, 223 F.3d 1135, 1142 (9th Cir. 2000) (proof of random acts or isolated incidents of unconstitutional action by a non-policymaking employee are insufficient to establish the existence of a municipal policy or custom). Plaintiff therefore fails to state a *Monell* claim against the MCAO for violation of his Fourth Amendment rights.

### 4. Fifth Amendment Claim

The Double Jeopardy Clause of the Fifth Amendment, as applied to the states through the Fourteenth Amendment, "protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense." *Monge v. California*, 524 U.S. 721, 727–28 (1998) (citation omitted). "In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn . . . . In a nonjury trial, jeopardy attaches when the court begins to hear evidence." *Serfass v. United States*, 420 U.S. 377, 388 (1975) (internal citations omitted). Double jeopardy does not attach

---

[4] *See Brindley v. Best*, 192 F.3d 525, 533 (6th Cir. 1999) (denying qualified immunity for defendant officers who seized cash, an old report card, family photo albums, and other items even though the warrant only authorized a search for certain records related to a pawn and jewelry business; "[n]o reasonable officer in the defendants' position could have believed that certain seized items were within the scope of the warrant or evidence of a crime").

"until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.'" *Id.* (quoting *United States v. Jorn*, 400 U.S. 470, 479 (1971).) Specifically, jeopardy does not attach when a district court grants a petitioner's motion to dismiss an indictment because the petitioner has not yet been "put to trial before the trier of facts." *Id.* at 389.

Plaintiff alleges that all charges against him were dropped on May 25, 2022; however, three months later, Defendant Bhatia refiled charges for hindering prosecution and resisting arrest—charges he claims he "had already beat . . . in court." (Doc. 14 at 8.) Thus, he alleges that the refiling of these charges was a violation of the Fifth Amendment's Double Jeopardy Clause. (*Id.*)

The original charges against Plaintiff were dismissed without prejudice prior to any trial proceedings before a judge or jury. (Doc. 17-1 at 17–18.) As such, jeopardy did not attach, and the refiling of charges against Plaintiff did not violate his rights under the Fifth Amendment. Plaintiff's *Monell* claim against the MCAO based on a Fifth Amendment violation will be dismissed.[5]

**VII.   Motion to Amend**

In response to County Defendants' Motion to Dismiss, Plaintiff requests leave to amend. (Doc. 23.)

. . . .

Under Local Rule of Civil Procedure 15.1, a party moving for leave to amend a pleading must attach a copy of the proposed amended pleading as an exhibit to the motion. LRCiv 15.1(a). Plaintiff did not attach a proposed fourth amended complaint to his Motion

---

[5] Because the Court finds that Plaintiff has failed to state a Fifth Amendment Double Jeopardy claim, the Court need not address County Defendants' argument regarding *Younger* abstention as to Plaintiff's ongoing state criminal proceeding. (Doc. 17 at 11–14.) *See Younger v. Harris*, 401 U.S. 37, 45–46 (1971) (under the doctrine of abstention, federal courts must abstain from enjoining a state prosecution except in exceptional circumstances where the danger of irreparable harm is great and immediate).

1  to Amend. (Doc. 23.) Plaintiff's Motion to Amend will therefore be denied without prejudice to refiling with the required attachment.

If Plaintiff moves to amend, any cause of action that was raised in the prior amended Complaint will be waived if it is not alleged in a fourth amended complaint. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). **This includes any cause of action against the FBI Defendants; those claims must be reasserted in a fourth amended complaint, or they are waived.** *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (an amended pleading supersedes the original complaint and any prior amended complaints).

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to County Defendants' Motion to Dismiss and Motion for Judicial Notice (Doc. 17), Plaintiff's Motion to Amend (Doc. 23), and Plaintiff's Motion for Hearing (Doc. 26).

(2) Plaintiff's Motion for Hearing (Doc. 26) is **denied**.

(3) County Defendants' Motion to Dismiss and Motion for Judicial Notice (Doc. 17) is **granted**.

(4) The claims against MCAO, Mitchell, and Bhatia are **dismissed**, and these three Defendants are **dismissed** from the action.

(5) Plaintiff's Motion to Amend (Doc. 23) is **denied** without prejudice.

Dated this 19th day of October, 2023.

_____
Honorable John J. Tuchi
United States District Judge